UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHELSIE VANLIESHOUT,

        Plaintiff,

        v.                                           Case No. 20-C-846

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

      Plaintiff Chelsie Vanlieshout filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. She contends that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

      Plaintiff filed her application for a period of disability and disability insurance benefits on January 9, 2018, alleging disability beginning July 6, 2016. R. 272–73. She listed blind or low vision, severe depression, anxiety, bipolar type 2, and urinary incontinence as the conditions limiting her ability to work. R. 298. She stated that she was terminated from her last job, which resulted in exacerbation of her mental health issues and that she had made several suicide attempts since. *Id.* After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. On June 28, 2019, ALJ Wayne Ritter held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 133–71.

At the time of the hearing, Plaintiff was 38 years old, single, and lived with her parents. R. 137. She stated that she completed some coursework at Fox Valley Technical College, the University of Wisconsin–Green Bay, and Lakeland College but did not complete any degree. R. 168–69. She testified that she lived independently when she was 22 but moved back in with her parents when she was 28 or 29 after she quit her job as a customer service representative and claims processor at Humana Insurance. R. 147. Plaintiff stated that she worked at Humana for about ten years and that her decision to quit her job was a "rash manic decision" during her "bipolar break." R. 148. Plaintiff testified that she subsequently worked for Homes for Independent Living as a personal care worker for individuals with brain injuries or developmental disabilities for five years. R. 148, 151. She stated that she left that position to begin working as a personal care worker at Innovative Services from 2014 to 2016 and performed client intake and client checks. R. 152–54. Plaintiff testified that she was terminated from that position because she made too many medication errors and forgot to administer medication to clients. R. 153. She reported that she volunteers a couple of hours per week at a dog rescue center. Her responsibilities include helping to care for the dogs, cleaning up, and putting away donated items. R. 154.

Plaintiff then described her urinary incontinence condition. R. 155. She testified that it began about two years prior to the hearing, after her most recent suicide attempt. *Id.* She testified that she had an Interstim device implanted, from which she noticed a 10% improvement, and that, since the past winter, she has been wearing adult diapers. R. 156–57. She also described the treatment she received for her mental health, including seeing a therapist and taking various medications, such as Lunesta for sleep; Lamotrigine, Viibryd, and Clonazepam for her mental health; and Vyvanse for her concentration. R. 157–59. Plaintiff noted that she has been hospitalized several times due to her suicide attempts, most recently in 2017. R. 159. Plaintiff

described that she smokes about half a pack of cigarettes per day but used to smoke at least a pack a day when she could afford it. R. 160. She also stated that she used to drink "a little too much to kind of self-medicate" prior to her bipolar disorder diagnosis but now drinks only rarely—"maybe one drink every six months"—out of concern for mixing her medications with alcohol. R. 160–61.

In an eighteen-page decision dated September 3, 2019, the ALJ found that Plaintiff was not disabled under the Social Security Act from her alleged onset date through the date of the decision. R. 33–50. In reaching his decision, the ALJ followed the five-step sequential evaluation process established by the Social Security Administration (SSA) for determining disability. R. 34. The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021, and that she had not engaged in substantial gainful activity since her alleged onset date of July 6, 2016. R. 35. The ALJ determined that Plaintiff had the following severe impairments: bipolar II disorder, depression, anxiety, and a borderline personality disorder. R. 36. The ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 39. The ALJ then assessed her RFC: "[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to working in a low stress environment, defined as one with only occasional changes in the work setting, and involving only occasional interaction with the public, co-workers and supervisors." R. 42.

The ALJ found that Plaintiff had past relevant work as a caregiver, intake worker, and claims clerk, but under the limitations of her RFC, Plaintiff could not perform her past relevant work as generally or actually performed. R. 48. The ALJ nevertheless determined that,

considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner II, hand packer, and laundry worker II. R. 49. As a result, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from July 6, 2016, through the date of the decision. R. 50. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security in her case. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the

4

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every

piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

### A. Assessment of Medical Opinions

Plaintiff asserts that the ALJ erred in assessing the medical opinions of Dr. Theresa Chinnery and Dr. Anthony Wendorf. The ALJ evaluated the medical opinions under a regulation that became effective for applications filed on or after March 27, 2017. Under the new regulation, the ALJ is not required to give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ focuses on the persuasiveness of the medical opinions by considering the following factors: supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c)(1)–(5). The regulation explains that

6

supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2). In other words, the ALJ must discuss supportability and consistency of an opinion but is not required to discuss the other factors.

Plaintiff asserts that the ALJ erred in assessing the medical opinions of Dr. Chinnery when formulating Plaintiff's RFC. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96-8p. Plaintiff maintains that the ALJ played doctor by analyzing Dr. Chinnery's neurological assessment in assessing Plaintiff's RFC. Dr. Chinnery completed a comprehensive neuropsychological assessment in January and February 2019. R. 655–69. Dr. Chinnery made the following findings:

> The results of Ms. Vanlieshout's neuropsychological assessment indicate some lateralized cognitive deficits with significant difficulty for Ms. Vanlieshout with her visual memory, visual planning and problem solving, and visuospatial/visuomotor functions. In contrast, her auditory memory is within the normal range for information that is more inherently organized such as stories. However she has difficulty with new learning/encoding of more effortful information suggesting some difficulty with cognitive organization. In that regard, Ms. Vanlieshout is demonstrating borderline deficits in her executive system functions in regard to cognitive flexibility/abstract reasoning. She demonstrates psychomotor slowing affecting verbal fluencies and her motor functions, while confrontational naming and vocabulary as well as reading abilities remain within the normal range. Her attention is within the low normal to borderline range which is not unexpected given the severity of her depression. Regarding emotional functioning, Ms. Vanlieshout is experiencing significant depression as well as poor self-esteem and social isolation. She remains at risk for self-harm behaviors given her difficulty with her cognitive functioning as well as psychosocial stressors.

R. 661.

Plaintiff argues that the ALJ "was not in a position to find exaggeration as a basis for discounting" Dr. Chinnery's findings. Pl.'s Br. at 17, Dkt. No. 20. The ALJ did not find that Plaintiff exaggerated, however. Instead, he noted that Dr. Chinnery observed that Plaintiff's "pattern of responses" on a personality assessment inventory "indicates a tendency toward over-

7

reporting of symptoms to a degree which can sometimes appear as a 'cry for help,'" and that Dr. Chinnery stated that, while this level of distortion did not render the test results invalid, the pattern of results may over-represent the extent and degree of significant test findings. R. 44 (quoting R. 660). He also noted that Dr. Chinnery's test results indicated a pattern of over-reporting, which is consistent with Dr. Chinnery's findings being different from the longitudinal observations of her providers. The ALJ explained that Plaintiff's function reports denied problems with memory or understanding and that Plaintiff's providers at many appointments noted no deficiencies in her memory. He also noted that the other consultative examination in the record did not note problems with Plaintiff's fund of knowledge, memory, intelligence, or ability for abstract thinking. The ALJ indicated that Plaintiff was able to pass a health psychology course, learn to perform volunteer work for an animal rescue organization, and work in a bait shop during the relevant period, which the ALJ found indicated an ability to take in new information. *Id.* The ALJ's analysis was not improper.

Plaintiff also asserts that the ALJ erred in finding that her daily activities were inconsistent with Dr. Chinnery's assessment. She maintains that the ALJ was required to mention that Plaintiff's activities of daily living did not prove that she could do full time work. An ALJ is not required to explicitly state that a claimant's daily activities do not prove that she can do full time work, however. While an ALJ cannot "equate such activities with the rigorous demands of the workplace . . . it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (internal quotation marks and citations omitted). In this case, the ALJ determined that Plaintiff's activities were inconsistent

with Dr. Chinnery's opinions. The ALJ's conclusions were reasonable and do not necessitate remand.

Plaintiff asserts that the ALJ "played doctor" by improperly reviewing Dr. Chinnery's neuropsychological assessment when assessing her RFC. She asserts that, because the state agency reviewing consultants did not review Dr. Chinnery's assessment, the ALJ should have hired another psychological expert to review it. Plaintiff relies on *Akin v. Berryhill*, 887 F.3d 314 (7th Cir. 2018), for the proposition that the record must be reevaluated by a medical expert "if new evidence exists which either undermines the state agency findings or at least calls into question the state agency findings." Pl.'s Br. at 19, Dkt. No. 20. But *Akin* concerned an ALJ's improper interpretation of MRIs without the assistance of a medical expert. 887 F.3d at 317 ("[W]ithout an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment." (citations omitted)). Plaintiff does not cite to any imaging studies or other medical data the ALJ impermissibly interpreted. Instead, Plaintiff maintains that the ALJ improperly analyzed Dr. Chinnery's assessment. When a case proceeds to an administrative hearing, however, the ALJ "is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c). In this case the ALJ fulfilled his role by reviewing the medical and other evidence in the record and making appropriate inferences from the record to formulate Plaintiff's RFC. Although Plaintiff disagrees with the ALJ's findings, it is not the Court's role to reweigh the evidence or substitute its judgment for that of the ALJ. *See Lopez*, 336 F.3d at 539. In this case, the ALJ properly considered Dr. Chinnery's opinions, and his decision is supported by substantial evidence.

Plaintiff argues that the ALJ erred in assessing the weight to be given to the consultative examination of Dr. Wendorf. Dr. Wendorf completed a psychological evaluation on April 12,

9

2018. R. 581–84. He opined that Plaintiff's ability to understand, remember, and carry out simple work instructions shows mild limitations; her ability to respond appropriately to supervisors and coworkers shows marked limitations; her ability to maintain concentration, attention, and work pace shows moderate-to-marked limitations; and her ability to withstand routine work stresses and adapt to changes shows moderate-to-marked limitations. R. 584.

Plaintiff argues that the ALJ's assessment of Dr. Wendorf's opinions is flawed because he did not clearly indicate what weight he afforded Dr. Wendorf's opinions and that the ALJ did not consider Dr. Wendorf's examining relationship with Plaintiff. But, as explained above, the new regulations do not require the ALJ to assign a specific weight to the opinions offered by medical sources. Instead, the ALJ must describe the persuasiveness of the opinion by discussing supportability and consistency with the evidence in the record and is not required to discuss the other factors such as the relationship with the claimant and specialization. 20 C.F.R. § 404.1520c.

In this case, the ALJ found Dr. Wendorf's opinions unpersuasive because they are inconsistent with the evidence as a whole. He explained that the opinions are not supported by his findings during the mental capacity examination that Plaintiff's memory and fund of knowledge were normal, that she was able to complete serial 7's and 3's with only reported challenges, that she could follow commands and track the conversation, and that her abstract thinking abilities were adequate. He noted that these findings were similar to the observations of Plaintiff's providers. R. 47.

Plaintiff argues that, even though the ALJ concluded Dr. Wendorf's opinions were inconsistent with the record, the ALJ failed to acknowledge that Dr. Wendorf's opinions were actually consistent with Dr. Chinnery's assessment. The ALJ concluded that Dr. Wendorf's and Dr. Chinnery's findings were "not completely in alignment," suggesting that the ALJ recognized

10

that their assessments contained similar findings. R. 44. The ALJ found that Dr. Wendorf's findings "are somewhat better supported by the record." *Id.* Even if Dr. Wendorf and Dr. Chinnery made some consistent findings, the ALJ explained how their assessments were inconsistent with substantial evidence in the record.

Plaintiff contends that the ALJ erred when he "gave more weight to the state agency consultants." Pl.'s Br. at 24, Dkt. No. 20. The ALJ found persuasive the opinions of the state agency psychological consultants, Dr. Jason Kocina and Dr. Stacy Fiore. Although Plaintiff asserts that the ALJ did not provide any rationale for his decision, the ALJ thoroughly explained why he found their opinions persuasive, primarily that their opinions were consistent with the record. He explained that Plaintiff stated in her function report that she was able to take care of her personal care with only some reminders, prepare meals, complete chores with some reminders, go out alone, drive, manage her funds and spend long periods of time watching television or going fishing. He observed that Plaintiff's providers noted few deficits except in her mood presentation and that there was little evidence that Plaintiff could not engage in basic interactions with providers. The ALJ also noted that Plaintiff worked at a bait shop and at an animal rescue organization where she had to interact with others and that she showed an ability to pass a college-level psychology class without evidence of any special accommodations. The ALJ explained that, while there were some deficits noted in her neuropsychological examination, when compared to the rest of the evidence in the record, including the few findings in Dr. Wendorf's examination, the evidence does not support greater limitation than opined by the state agency consultants. R. 46. The ALJ created a logical bridge between the evidence and his conclusions and substantial evidence supports his decision.

**B. Limitations in Concentration, Persistence, or Pace**

Plaintiff claims that the ALJ failed to incorporate her limitations in the broad functional areas of concentration, persistence, and pace (CPP) into the RFC and hypothetical posed to the VE. "It is well-established that both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Burmester*, 920 F.3d at 511 (internal quotation marks and citation omitted). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). The responsibility for assessing a claimant's RFC in a case that proceeds to a hearing lies with the ALJ. 20 C.F.R. § 404.1546(c). The assessment of a claimant's RFC is based on "all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Because the ALJ found the opinions of Dr. Kocina and Dr. Fiore the most persuasive, the Court will begin by looking to their opinions to determine whether the ALJ properly assessed Plaintiff's RFC.

The state agency reviewing psychologists completed mental residual functional capacity assessments (MRFC) based on their review of the record. The MRFC is a form the agency uses to document its assessment of a claimant's mental RFC. The form lists a series of questions intended to address the claimant's ability to perform various work activities. For each functional area, the reviewing psychologist is asked if the individual has any limitations. Follow-up questions then ask the reviewer to rate the individual's limitations as to various activities within that functional area. The Social Security Administration's Program Operations Manual System (POMS) lists the ratings to be used and what they are intended to mean. The ratings are "not significantly limited," which means "the effects of the mental disorder do not prevent the individual from consistently and usefully performing activity;" "moderately limited," which means "the individual's capacity to

12

perform the activity is impaired;" and "markedly limited," which means "the individual cannot usefully perform or sustain the activity." POMS DI 24510.063, SOCIAL SECURITY, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063 (last visited Sept. 24, 2021). The reviewer can also indicate that there is no allegation of a limitation or that the evidence is insufficient. When the activity is rated "moderately limited," the degree and extent of the capacity or limitation must be described in narrative form in another section of the MRFC. *Id.*

Dr. Kocina completed the MRFC on April 18, 2018. Dr. Kocina indicated that, with respect to Plaintiff's sustained concentration and persistence limitations, Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods. In the narrative portion of the form, he explained that Plaintiff "appears to have some difficulty maintaining her concentration for an extended period especially when she is intoxicated. She is moderately limited in her CPP." R. 182. Dr. Kocina noted that, with respect to Plaintiff's social interaction limitations, Plaintiff was moderately limited in the ability to interact appropriately with the general public and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. *Id.* He explained, "[w]hile she appears casually dressed with adequate hygiene, it is noted that she needs reminder for personal care at times and has a tendency to avoid others. Those indicated that she is moderately limited in her ability to interact with others." *Id.* As to Plaintiff's adaptation limitations, Dr. Kocina found that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. R. 183. He explained, "She appears to have some difficulty handling stress and changes in routine, which indicate that she is moderately limited in her ability to adapt/manage." *Id.* Dr. Kocina provided the following narrative description of Plaintiff's RFC:

> Overall, she is moderately limited by her mental condition and retains the capacity to understand, remember, carry out the sustained performance of routine work tasks

13

throughout a normal workday, interact with others occasionally and adapt to changes associated with a typical unskilled competitive work environment.

*Id.*

At the reconsideration level, Dr. Fiore completed an MRFC on September 12, 2018. As to Plaintiff's sustained concentration and persistence limitations, Dr. Fiore indicated that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 198. She noted in the narrative section of the form that Plaintiff "is able to maintain attention, concentration, persistence, and pace for simple and detailed, routine tasks, for two hours at a time, over a normal workday/week, with normal supervision." *Id.* With respect to Plaintiff's social interaction limitations, Dr. Fiore indicated that Plaintiff was moderately limited in her ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. 198–99. Dr. Fiore explained that Plaintiff "is able to tolerate the minimum social demands of a routine-task setting. [Claimant] can tolerate superficial interactions with public, coworkers and supervisors while completing tasks. [Claimant] is able to maintain adequate grooming and hygiene." R. 199. Dr. Fiore indicated, with respect to Plaintiff's adaptation limitations, that Plaintiff is moderately limited in the ability to respond appropriately to changes in the work setting. She noted, "[Claimant] is able to tolerate changes in routine, avoid hazards, travel independently, and make/carry out plans." *Id.* In the explanation section of the form, Dr. Fiore noted, "see PRFT and Findings." *Id.*

The ALJ found the opinions of the state agency psychologists persuasive. He ultimately concluded that Plaintiff had the following limitations: "she is limited to working in a low stress environment, defined as one with only occasional changes in the work setting, and involving only occasional interaction with the public, co-workers and supervisors." R. 42. Plaintiff asserts that the ALJ erred in relying on the findings of the state agency reviewing psychologists because their findings are not supported by the record. But as explained earlier, substantial evidence supports the ALJ's decision to find their opinions persuasive. The ALJ's reliance on Drs. Kocina and Fiore's findings was permissible. Although Plaintiff asserts that the ALJ should have included the limitations found by Drs. Chinnery and Wendorf, the ALJ adequately explained why he rejected those limitations.

Plaintiff also argues that the ALJ's RFC and hypothetical question posed to the VE did not include any limitations in CPP. ALJs are not required to use the specific phrase "concentration, persistence, and pace" in an RFC. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("As a matter of form, the ALJ need not put the questions to the [vocational expert] in specific terms—there is no magic words requirement."). Instead, the ALJ must "account for the totality of a claimant's limitations in determining the proper RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). In this case, the ALJ accounted for Plaintiff's mental limitations in determining her RFC. In her reply brief, Plaintiff maintains that the ALJ failed to include all of the limitations found by the state agency reviewing psychologists. Specifically, Plaintiff contends that the RFC did not contain a limitation concerning Dr. Fiore's finding that Plaintiff "is able to maintain attention, concentration, persistence, and pace for simple and detailed, routine tasks, for two hours at a time, over a normal workday/week, with normal supervision." R. 198. However, arguments made for the first time in a reply brief are considered waived. *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906,

15

913 (7th Cir. 2011) ("It is well established in our precedents that skeletal arguments may be properly treated as waived, as may arguments made for the first time in reply briefs."). In any event, Dr. Fiore's explanation that Plaintiff is "able to maintain attention, concentration, persistence, and pace for simple and detailed, routine tasks, for two hours at a time, over a normal workday/week, with normal supervision," is not a limitation at all. R. 198. Instead, it is a comment that Plaintiff is capable of maintaining CPP and taking normal work breaks, which is consistent with the schedule of a typical workday. The ALJ's RFC assessment and the hypothetical question posed to the VE adequately accounted for the restrictions Drs. Kocina and Fiore found would accommodate Plaintiff's limitations in CPP. The ALJ provided an adequate explanation for his findings. His conclusions are not patently wrong and do not necessitate remand.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this <u>24th</u> day of September, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge